# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**FAULMAN INVESTMENT, LTD.,**
            **Plaintiff,**

            **v.**                                                   **Case No. 24-CV-1460**

**ENGINEERED PRODUCTS & SERVICES, INC.,**
            **Defendant,**

            **v.**

**FAULMAN MANAGEMENT COMPANY, INC.,**
***et al.***
            **Third-Party Defendants.**
_____

## <u>ORDER</u>

Plaintiff Faulman Investment, Ltd., filed this suit on November 11, 2024 against defendant Engineered Products and Services, Inc. ("EPSI"), alleging breach of lease for non-payment of rent and non-occupancy of a property. In addition to answering on February 5, 2025, EPSI filed a counterclaim and third-party complaint alleging breach of contract, breach of lease, and various tortious acts by plaintiff and third-party defendants Faulman Management Co. Inc., Associated Rack Corp., William L. Faulman, and C. Kyle Faulman.[1] Before me now are Liberty Mutual Fire Ins. Co.'s motion to intervene and third-party defendants' motion to dismiss the third party complaint.

---

[1] The filings sometimes call this individual Christopher K. Faulman, sometimes C. Kyle Faulman, and sometimes Christopher Kyle Faulman. Because his attorney calls him "Kyle Faulman," I will defer to this notation. *See* ECF No. 45 at 1.

## I.  BACKGROUND

This action was initially brought by the plaintiff Faulman Investment, Ltd. ("FI"), which is a Florida limited partnership. ECF No. 56 ¶ 1. FI has nineteen limited partners who are citizens of Florida, Tennessee, Georgia, and Illinois. *Id.* at ¶¶ 3–22. In addition, FI has one general partner, Faulman Management Company, Inc. ("FM"), incorporated in Florida with a principal place of business in Florida. *Id.* at ¶ 2. The suit was brought against Engineered Products and Services, Inc. ("EPSI"), which is a Wisconsin corporation with a principal place of business in Wisconsin. ECF No. 17 at 21. EPSI manufactures and distributes high temperature maskants and engineered fixtures for the industrial fishing industry, among other things. *Id.*

FI's original complaint contains two causes of action against EPSI. First, FI alleges that EPSI failed to pay various rents, taxes, and utilities in violation of a lease connected to six properties. ECF No. 56 ¶¶ 29, 38–41, 115–124. The second cause of action pertains to burglary and theft at one of the leased properties located in St. Louis, Missouri. *Id.* at ¶ 99. FI alleges that because EPSI was not occupying the premises or maintaining the property in a neat, clean, and orderly condition, all in violation of the lease, the property was "open to criminal actors." *Id.* at ¶¶ 100, 132. As a result, FI contracted with a third-party management company "to protect what remained" of the property. *Id.* ¶ 102. FI alleges total damages of $377,825.20. *Id*. at 13.

FI's complaint also included, at one time, a third cause of action against Liberty Mutual Insurance Co. ("LM Insurance"), which FI alleged insures EPSI. LM Insurance is an Illinois corporation with a principal place of business in Massachusetts. ECF No. 30, ¶ 24. FI amended their complaint to drop defendant LM Insurance, who consented and

sought to also have all of its cross- and counter-claims dismissed. ECF Nos. 55, 28. That amendment also explained that FI "[t]hrough the course of this action" learned that Liberty Mutual Fire Insurance Co. is EPSI's insurer. ECF No. 56 ¶ 111. On October 7, 2025, I granted leave to amend and LM Insurance was dismissed from the suit. Text Only Order, Oct. 7, 2025.

In addition to responding to FI's complaint, EPSI brought a counterclaim and third-party complaint, alleging breach of contract, breach of lease, and various tortious acts by FI and four additional third-party defendants. Third-party defendant FM, as previously described, is the only general partner of FI. Third-party defendant Associated Rack Corporation ("ARC") is a Florida corporation with a principal place of business in Florida, which manufactures racks for industrial fishing. ECF No. 17 at 21.[2] It was voluntarily dissolved in late 2022 or early 2023. *Id*. Lastly, third-party defendants William Faulman, a citizen of Florida, and Kyle Faulman, a citizen of Tennessee, (collectively "the Faulmans") are limited partners of FI. ECF No. 56, ¶¶ 4, 15. EPSI also alleges the Faulmans were principal officers of ARC and controlled the day-to-day operations of the same. ECF No. 17 at 22.

In the third-party complaint, EPSI explained that in December 2021 it entered into an Asset Purchase Agreement ("agreement") acquiring "substantially all" of ARC's assets for $4.335 million.[3] ECF No. 17 at 23. William Faulman, Kyle Faulman, and a third

---

[2] Because the counterclaim and third-party complaint is attached to EPSI's answer to the original complaint, the paragraphs restart in the middle of ECF No. 17. In addition, there was a paragraph numbering error in the causes of action. Therefore, I use only page numbers as references when discussing the counterclaim and third-party complaint.

[3] The parties dispute who is in privity of contract under the agreement.

individual who is now deceased, signed the agreement as representatives of ARC. *Id.* at 24; ECF No. 46-1 at 9. FM and the same deceased individual signed on behalf of FI. ECF No. 46-1 at 9. Kyle Faulman was retained as a consultant with EPSI following the closing, meant to support EPSI in transitioning sales from ARC to EPSI. *Id.* at 27. Although EPSI alleges that FI told it that that "all post-closing sales and accounts receivable due EPSI had been paid to EPSI," EPSI discovered evidence of an "open account" of with a balance exceeding $500,000 that EPSI believes is due to it. *Id.*

EPSI's counterclaim and third-party complaint includes six causes of action. First, EPSI alleges FI, FM, and ARC breached the agreement. *Id.* at 28–30. Second, EPSI alleges FI and FM breached the same lease under which FI is suing. *Id.* at 30–32. EPSI's third cause of action, against FI, FM, William Faulman, and Kyle Faulman, is negligence for failing to exercise the degree of care owed to EPSI in business matters, reiterating many of the same actions underlying the breach of contract and breach of lease claims. *Id.* at 32–33. The fourth cause of action is for misrepresentation by FI, FM, William Faulman, and Kyle Faulman, alleging generally that these third-party defendants had a duty to disclose certain information and maintain and secure the St. Louis property. *Id.* at 33–34. The fifth cause of action is unjust enrichment against FI, FM, ARC, William Faulman, and Kyle Faulman for refusing to account for or deliver the $500,000 account, misappropriating information and money from EPSI. *Id.* at 34. Finally, EPSI seeks an accounting and constructive trust. *Id.* at 35.

## II. MOTION TO INTERVENE

There have been four amendments to the original complaint. Twice, I asked FI to make clarifications regarding various parties' citizenship to ensure that I have subject-

4

matter jurisdiction. ECF Nos. 5, 11. Between the original complaint and the first amended complaint, FI also added the second cause of action pertaining to the burglary and theft at the St. Louis premises, and a third cause of action against LM Insurance. For some time, the third amended complaint was the operative complaint. That complaint included enough allegations of citizenship and the three causes of action.

However, when LM Insurance filed its answer, it became clear that there was a problem after all with diversity of citizenship and thus subject-matter jurisdiction. *See* 28 U.S.C. § 1332. [4] To maintain jurisdiction, there must be complete diversity of citizenship, meaning no party on the plaintiff's side of the suit shares citizenship with any party on the defendant's side. *Page v. Democratic National Committee*, 2 F.4th 630, 636 (7th Cir. 2021). FI, as a limited partnership, is a citizen of every jurisdiction of which any partner is a citizen. *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 316 (7th Cir. 1998). Therefore, FI is a citizen of Florida, Tennessee, Georgia, and Illinois. LM Insurance, as a corporation, is a citizen of its place of incorporation and principal place of business, making it a citizen of Illinois and Massachusetts. 28 U.S.C. § 1332(c)(1). Under the third amended complaint, FI was a plaintiff and LM Insurance was a defendant. Because both are considered citizens of Illinois, this destroyed complete diversity.

To ameliorate the problem, FI sought to drop LM Insurance as a defendant. ECF No. 55. Aside from the issue of diversity of citizenship, it also became clear that LM Insurance was not EPSI's insurer; its affiliate Liberty Mutual Fire Ins. Co. ("Liberty Fire") was. *Id.* at 2–4. No party opposed the motion. ECF Nos. 57, 58. I granted that request on

---

[4] Recall, also, that FI alleges damages in excess of $300,000, well beyond the $75,000 threshold of the statute. No party alleged any claims grounded in federal law.

October 7, 2025, dismissing LM Insurance as a defendant and all of its pending cross- and counter-claims.

Following LM Insurance's dismissal, Liberty Fire filed a motion to intervene. ECF No. 63. FI and third-party defendants filed a letter of nonopposition to the motion. ECF No. 70. However, EPSI opposes the intervention. ECF No. 71. For the reasons stated below, I will grant the motion to intervene.

### A. Legal Standard

Rule 24 governs mandatory and permissive intervention. Courts are required to permit intervention if the movant can prove: (1) the movant makes a timely application; (2) the movant has an "interest" in the property or transaction which is the subject of the action; (3) disposing of the action may impede or impair the applicant's ability to protect that interest; and (4) no existing party adequately represents the applicant's interest. Fed. R. Civ. P. 24(a); *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995). [5] I "must accept as true the non-conclusory allegations of the motion." *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019)*.*

If a movant does not qualify for intervention as a matter of right, a court may still permit intervention if the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights" when ruling on permissive intervention. Fed. R. Civ. P. 24(b)(3). "Whether to allow permissive intervention is a highly discretionary decision," which "'leaves the

---

[5] Rule 24 also permits intervention when a federal statute makes it so. However, as no federal statutes are at issue in this case, I omit any such discussion.

district court with ample authority to manage the litigation before it.'" *Bost v. Ill. State Board of Elections*, 75 F.4th 682, 690–91 (7th Cir. 2023) (quoting *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 803 (7th Cir. 2019)). In determining whether to permit intervention under this Rule, "the only *required* considerations . . . are undue delay and prejudice to the rights of the original parties." *Id.* (emphasis in original).

## B. Discussion

Liberty Fire argues that it may intervene as a matter of right under Rule 24(a)(2) or, alternatively, permissibly under Rule 24(b). EPSI argues that it should not be permitted to intervene as a matter of right because the motion is untimely, Liberty Fire does not have an interest related to the subject-matter of this action, and even if it did, the disposition of this case would not impede or impair liberty fire's ability to protect such an interest. Furthermore, EPSI argues against permissive intervention, averring that such intervention would frustrate judicial economy and prejudice the rights of the original parties. After considering these arguments, I find that permissive intervention is appropriate.

### i. Subject-Matter Jurisdiction

Before turning to Liberty Fire and EPSI's arguments as to intervention, I must address the potential effect of intervention on subject-matter jurisdiction. EPSI is a citizen of Wisconsin, while Liberty Fire is a citizen of Wisconsin and Massachusetts. At first blush, allowing Liberty Fire to become party to the suit might raise some jurisdictional concerns. However, the Supreme Court has made it clear that the intervention of a nondiverse party does not necessarily defeat diversity jurisdiction after it has been established. *Freeport-McMoRan, Inc. v. K.N. Energy, Inc.*, 498 U.S. 426, 428 (1991). The exception is when the

intervening party was indispensable at the time the complaint was filed. *Am. Nat. Bank & Trust Co. v. Bailey*, 750 F.2d 577, 582 (7th Cir. 1984). *See also Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006) ("Jurisdiction is not defeated by the intervention of a party who had no interest whatsoever in the outcome of the litigation until sometime after suit was commenced.") (internal quotations omitted); *Schuld v. Thodos*, 21-cv-1807, 2022 WL 888870, at *4 (N.D. Ill., Mar. 25, 2022) (collecting cases).[6] Therefore, to determine whether Liberty Fire's intervention destroys diversity jurisdiction, I must asses whether it is an indispensable party to this action.

Although the Seventh Circuit has not specifically addressed the meaning of "indispensable" in the context of Rule 24, it has discussed the concept with respect to Rule 19. *See Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999); *United States v. Tribal Development Corp.*, 100 F.3d 476478 (7th Cir. 1996); *Schuld*, 2022 WL 888870, at *5 n.1. Using the four-factor balancing standard under Federal Rule of Civil Procedure 19(b), I must consider "(1) whether a judgment rendered in the party's absence might be prejudicial to that party or to the existing parties; (2) the extent to which relief can be tailored to avoid prejudice to the party; (3) whether a judgment in the party's absence would be adequate; and (4) whether the plaintiff has an adequate remedy if the action is dismissed." *Woodring v. Culbertson*, 227 F.R.D. 290, 294 (N.D. Ind., Apr. 14, 2005).

---

[6] There is an unpublished Seventh Circuit opinion that predates *Aurora Loan Services* by eight days in which the Seventh Circuit dismissed an intervenor because he intervened as a plaintiff and was not diverse from the defendant. *Contimortgage Corp. v. Anglezis*, 173 F. App'x 458, 464 (7th Cir. 2006). In this case, it is not clear whether Liberty Fire would be considered a "plaintiff" or "defendant" intervenor because both FI and EPSI have an interest in a finding that Liberty Fire must indemnify EPSI for property damages. This case bears more similarity to *Aurora Loan Services*.

8

By intervening, Liberty Fire wants to address whether its insurance policy covered the damages related to the burglary and theft of the St. Louis premises in November of 2024. It is telling, first and foremost, that dismissal of Liberty Fire's associate Liberty Mutual did not undercut my ability to adjudicate this case. This suggests that the joinder of an insurance company was not necessary and, thus, that Liberty Fire is not an indispensable party. Additionally, Liberty Fire's interest in determining whether the policy covers the burglary and vandalism at the St. Louis property did not ripen until *after* this suit commenced. Until this action put this issue in controversy, Liberty Fire's interest lay dormant. This comports with the Seventh Circuit's articulation that an intervenor is not an indispensable party when "the occasion for intervention arose after the suit was brought." *Aurora Loan Servs.*, 442 F.3d at 1026.

Directly addressing the factors named above, I come to the same conclusion. Whether the burglary and theft are covered by the policy is a separate issue from whether EPSI was occupying the property or whether FI and the third-party defendants had a responsibility to secure the property and repair or rebuild the property. Liberty Fire's issue requires only interpretation of the policy contract. A judgement without Liberty Fire would not be prejudicial to it or any existing parties. Tailoring relief to avoid any prejudice is straightforward: a judgment would simply note that the results of this suit would not affect another related suit. For the same reasons, judgment without Liberty Fire would be adequate. Liberty fire would, in any case, be able to bring an action to determine whether the policy covered these events. All factors suggest, therefore, that Liberty Fire was not an indispensable party and thus intervention will not destroy diversity jurisdiction.

9

### ii.      Timeliness

As part of my management of the case, I ordered that motions to intervene must be filed on or before October 15, 2025. ECF No. 54. Liberty Fire timely made this motion on October 15, 2025. ECF No. 63. Therefore, although EPSI protests that the motion is untimely, I cannot agree. Moreover, Liberty Fire filed the motion just eight days after I dismissed LM Insurance from the suit. Liberty Fire could have reasonably believed LM Insurance was appropriately representing its interests up until that point. Once LM Insurance was no longer representing Liberty Fire's interests, it promptly moved to intervene. The motion is timely.

### iii.      Liberty Fire's Interest

"Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination." *Schipporeit*, 69 F.3d at 1381. The Seventh Circuit counsels that an interest must be "direct, significant, legally protectable" to qualify under the rule. *Id.* at 1380 (citing *City of Chicago*, 865 F.2d at 146). This "unique" interest must be "based on a right that belongs to the proposed intervenor rather than to an existing party in the suit," meaning that the interest is not "derived from the rights of an existing party." *Bost*, 75 F.4th at 687.

EPSI argues that Liberty Fire's claims "have no overlap" with the other parties' claims and no parties are alleging a claim against Liberty Fire. ECF No. 71 at 4. This misunderstands the concept of an interest for the purposes of intervention. If any of the existing parties were asserting a claim over Liberty Fire directly, it would already be a party to the case. Instead, Liberty Fire is asserting an interest in the determination of whether its policy covers the damages that occurred in connection to the burglary and

10

theft of the St. Louis property. This is "direct, significant, and legally protectable." No other party can appropriately represent its interest, nor is it derivative of another party's interest. If it turns out that any of the existing parties are liable for those damages, all would have an interest in a finding that Liberty Fire's insurance covers such damage. Thus, no other party is able to represent Liberty Fire's position that the insurance does *not* cover those events.

### iv. Impairment of Liberty Fire's Ability to Protect its Interest

Finally, EPSI argues that Liberty Fire's interest will not be impaired by the action's disposition because there is no coverage claim and proving those claims would not affect Liberty Fire's interest. ECF No. 71 at 5. Liberty Fire agrees that it "cannot be bound by any determination issued without its participation," but nonetheless argues that it "has an obvious interest in the resolution of the issue." ECF No. 72 at 3.

On this point, I agree with EPSI. Although Liberty Fire clearly has a unique interest in this litigation, the action's disposition will not necessarily impair Liberty Fire's ability to protect that interest. This is not surprising given my previous finding that Liberty Fire is not an indispensable party to this action. It would be somewhat incongruous to find that Liberty Fire, though not indispensable, has a right to intervene. If any party is found liable for damages and seeks payment from Liberty Fire alleging coverage under the insurance, Liberty Fire could bring an action it its own right to determine whether they are required to indemnify. It would not be prejudiced by the fact that this action had already been resolved. Therefore, Liberty Fire may not intervene as a matter of right.

11

### v. Permissive Intervention

This does not rule out permissive intervention. Liberty Fire nearly meets the requirements for intervention as a matter of right. I have already determined that the motion was timely. Therefore, I need only consider whether "the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). EPSI argues that permitting intervention will both unduly delay and prejudice the original parties. In support, it states only that this would "expand the scope of this case," including by adding unnecessary cost and complexity. ECF No. 71 at 6. But Liberty Fire is merely seeking a judgement interpreting their policy in application to the facts of this case. This is a simple and straightforward addition that would encourage judicial economy. Rather than forcing Liberty Fire to bring an entirely new case based on the same facts, it makes sense to apply the existing record to the policy. It is reasonable to adjudicate this claim in conjunction with those already in the case. I will permit Liberty Fire to intervene under Rule 24(b).

### III.    MOTION TO DISMISS THIRD-PARTY COMPLAINT

ARC, FM, William Faulman and Kyle Faulman ("the third-party defendants") move to dismiss the third-party complaint pursuant to Fed. R. Civ. P. 12(b)(6).[7] As previously described, plaintiff brings six total claims: breach of contract, breach of lease, negligence, misrepresentation, unjust enrichment, and for an accounting and constructive trust. Although the parties agree that most of the claims are governed by Wisconsin law, they disagree as to whether the claims of negligence and misrepresentation should be

---

[7] FI, the original plaintiff, does not join in this motion and therefore the counterclaims against it will stand irrespective of this motion.

12

governed by Wisconsin law or Florida law. Therefore, after a brief overview of the applicable legal standard, I analyze law applicable to the negligence and misrepresentation claims before turning to the rest of the claims.

## A. Legal Standard

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint. *Bell v. City of Country Club* Hills, 841 F.3d 713, 716 (7th Cir. 2016). To avoid dismissal, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The complaint's "allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted). In evaluating a motion to dismiss under Rule 12(b)(6), I must "accept the well-pleaded facts in the complaint as true"; however, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011).

13

## B. Choice of Law for Negligence and Misrepresentation Claims

This action was brought in federal court pursuant to 28 U.S.C. 1332 (diversity of citizenship). The parties dispute whether Florida or Wisconsin law applies.[8] When a court sits in diversity, it looks to the choice of law rules in the forum state. *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 927 (7th Cir. 2024) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In Wisconsin, the first question is "whether a genuine conflict exists between Wisconsin law and the law of the other state." *Danielson v. Gasper*, 2001 WI App. 12, ¶ 5, 623 N.W.2d 182, 184. If not, I apply Wisconsin law. *Id*.

If there is a conflict between the laws, I proceed with a two-step evaluation.[9] First, when a contract is involved (as is the case here), I apply the grouping of contacts analysis. *NCR Corp. v. Transport Ins. Co.*, 2012 WI App 108, ¶ 13, 823 N.W.2d 532, 535–36. To do so, I consider (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e)

---

[8] EPSI also filed a motion to strike portions of third-party defendants' reply brief or, in the alternative, leave to file a sur-reply. ECF No. 69. I agree with third-party defendants that the reply brief contains only an expansion of existing arguments, rather than new ones. ECF No. 74. However, noting the third-party defendants' nonopposition to granting leave to file a sur-reply, *id*., I will grant leave to file a sur-reply. I deem the sur-reply, ECF No. 69-1, filed and have considered it in my analysis.

[9] Wisconsin courts acknowledge that "Wisconsin's choice-of-law jurisprudence has had something of a checkered past." *NCR Corp. v. Transport Ins. Co.*, 2012 WI App 108, ¶ 10, 823 N.W.2d 532, 535 (quoting *Drinkwater v. Am. Fam. Mut. Ins. Co.*, 2006 WI 56, ¶ 32, 714 N.W.2d 568, 574) (cleaned up). At times, the courts have applied the grouping of contacts analysis, and other times the choice-influencing factors analysis. *NRC*, 2012 WI App 108, ¶ 10, 823 N.W.2d at 535. However, the appellate court reconciled the two, holding that "the grouping-of-contacts analysis is merely step one of the choice-influencing-factor analysis." *Id*. ¶ 11, 823 N.W.2d at 535. I adopt this approach.

14

the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id*. In cases like this one that also involve tort law, I further consider the location(s) of the injurious conduct and injury. *Id*. If, after this analysis, "one state's contacts are clearly more significant, [I] may terminate [my] analysis and apply that state's law." *Id*. However, if the results of that analysis are inconclusive, I move on to the second step and consider the choice-influencing factors. *NCR Corp. v. Transport Ins. Co.*, 2012 WI App 108, ¶ 14, 823 N.W.2d 532, 536. "The factors are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." *Id*.

The parties agree that there is only one area of law in which Wisconsin and Florida law potentially conflict—Wisconsin's economic loss doctrine and Florida's analogous independent tort doctrine—which affects some of EPSI's tort claims against the third-party defendants. Therefore, I must first compare Wisconsin and Florida laws to determine whether there is a conflict before turning to the contact grouping and choice-influencing factors.

### i. Wisconsin and Florida Laws

Third-party defendants argue that the negligence and misrepresentation claims should be governed by Wisconsin law. More specifically, third-party defendants maintain that these claims are barred by Wisconsin's economic loss doctrine, ECF No. 45 at 6–9, and Florida's analogous independent tort doctrine, ECF No. 68 at 3–5. Since the state laws do not conflict, Wisconsin choice of law rules dictate that Wisconsin law should govern. ECF No. 68 at 5. In contrast, EPSI argues that neither Wisconsin's economic loss

15

doctrine nor Florida's independent tort doctrine bar these claims. ECF No. 59 at 16–17; ECF No. 69-1 at 2–5. Unsurprisingly, the parties also have opposing views on which state's law prevails under the contact grouping and choice-influencing factors analyses. ECF No. 59 at 8–12; ECF No. 68 at 6–9. But before turning to those analyses, I begin by determining whether Wisconsin and Florida laws conflict.

Wisconsin recognizes the economic loss doctrine, which requires an injured party to rely on contractual remedies rather than tort remedies when it suffers purely economic injuries related to a non-services contract. *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 27, 699 N.W.2d 205, 216; *Ins. Co. of N. Am. V. Cease Elec. Inc.*, 2004 WI 139, ¶ 52, 276 N.W.2d 462, 472. This is true irrespective of whether the parties to a suit are in privity of contract. *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 65, 662 N.W.2d 652, 666. At issue here are two different contracts and two different claims. First, EPSI asserts a negligence claim relating solely to one of the contracts: the lease. In it, EPSI alleges that FM and the Faulmans failed "to exercise due care in regard to the properties involved in the lease" by withholding or failing to disclose certain information and failing to secure and maintain one of the properties. ECF No. 17 at 32–33. Second, EPSI asserts a misrepresentation claim related to both contracts: the lease, and the agreement to purchase ARC. Here, EPSI effectively alleges fraud in the inducement, stating that FM and the Faulmans withheld information material to the agreement and lease which EPSI reasonably relied on.

I first consider the negligence claim. Although EPSI alleges purely economic injuries related to a non-services contract, EPSI contends that Wisconsin's economic loss doctrine does not apply to lease agreements for real property—only contracts for

16

purchase. The Wisconsin Supreme Court has expanded the scope of the economic loss doctrine over the last several decades, but it has never specified whether the doctrine applies to commercial leases for real property. Nonetheless, it has "conclude[d] that the economic loss doctrine may not be discarded simply because a transaction involves real estate." *Van Lare v. Vogt, Inc.*, 2004 WI 110, ¶ 21, 683 N.W.2d 46, 52. In *Van Lare*, an individual purchased a parcel of commercial real estate and later brought claims for intentional misrepresentation, negligent misrepresentation, and strict liability misrepresentation. *Id*. ¶¶ 4, 11. The Court noted that it would not decide "whether the broader conceptualization of the economic loss doctrine . . . covers all real estate transactions," but held that the doctrine barred a claim for strict liability misrepresentation under those facts. *Id*. ¶ 21. Specifically, the Court found that "applying the economic loss doctrine in this case furthers the policies that justify the doctrine's existence." *Id*. ¶ 24.

No Wisconsin court has explicitly affirmed the applicability of the economic loss doctrine to a *lease* rather than *purchase* of commercial real estate, yet the logic of *Van Lare* is applicable here. First, the *Van Lare* court emphasized its decision was largely premised on one of the primary purposes of the economic loss doctrine: maintaining the distinction between contract and tort law. *Id.* ¶ 25. While contract law "'seeks to hold commercial parties to their promises,'" tort law "focuses on 'protecting society as a whole from physical harm to person or property.'" *Id*. (quoting *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 404–05, 573 N.W.2d 842, 846 (1998)). These facts are more appropriately analyzed under contract law, not tort law. All of the negligent conduct that EPSI alleges ultimately pertains to the maintenance of the property. ECF No. 17 at 32–33 (alleging "deferred maintenance issues," failure "to disclose

environmental and hazardous waste issues," "failing to maintain and secure" one of the properties, and failing to timely inform of burglary and vandalism). The issue of maintenance is clearly dealt with in the lease, and as such should be analyzed under contract law. *See* ECF No. 56-2 at 5, "VII. Maintenance."

Moreover, as in *Van Lare*, this case involves a "written, bargained-for contract . . . between two sophisticated parties." *Id*. ¶ 21. The lease agreement, though not a purchase agreement, is still a commercial real estate transaction of the type contemplated in *Van Lare*. In fact, the lease is intertwined with the agreement to purchase ARC and is *part* of agreement. ECF No. 46-1, ¶ 8 (buyer and seller to bring executed lease agreement to deliver at closing of the purchase agreement). Generally, the economic loss doctrine is meant to "preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." *Id*. ¶ 19 (quoting *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 23, 677 N.W.2d 233, 241). That is precisely what EPSI is doing here. Lastly, I am unaware of—and EPSI has not cited—any cases holding that commercial real estate leases (indeed, any leases) are exempt from the economic loss doctrine. Therefore, I find that EPSI's negligence claim is barred by Wisconsin's economic loss doctrine.

I now consider the misrepresentation claim. Again, EPSI's misrepresentation claim effectively alleges fraud in the inducement for both the lease and the agreement. I have already explained why the economic loss doctrine is generally applicable to the lease, even though it is not a contract to purchase. Similarly, the agreement to purchase ARC falls squarely within the purview of the economic loss doctrine. *See 5 Walworth, LLC v. Engerman Contracting, Inc.*, 2023 WI 51, ¶ 27, 992 N.W.2d 31, 59. As to both the lease

18

and the agreement, EPSI now seeks recovery of purely economic losses. Therefore, they are presumptively barred by the economic loss doctrine.

However, because the allegations are consistent with fraud in the inducement, I must also consider whether the narrow fraud in the inducement exception to the economic loss doctrine is applicable. Under this exception, when "the fraud is extraneous to, rather than interwoven with, the contract" and has occurred before the contract formation, the economic loss doctrine may not apply. *Digicorp*, 2003 WI 54, ¶¶ 47, 52. Matters extraneous to the contract are those "not expressly or impliedly dealt with in the contract." *Id*. ¶ 47.

With respect to the lease, EPSI impliedly references the same maintenance issues described in the negligence claim, which are dealt with in the lease and most appropriately adjudicated under contract law. Since those issues are "interwoven" with the contract, the fraud in the inducement exception inapplicable. EPSI's misrepresentation claim for the agreement consists of comparisons between the language contained in the agreement and what EPSI allegedly experienced. For example, EPSI notes that the agreement stated the seller "has no notice of any EPA, DNR or other environmental hazards or issues relating to the places or properties where the Corporation conducts business." ECF No. 17 at 25. However, EPSI alleges that it was not informed of "environmental and hazardous waste, storage and reporting problems." *Id*. at 29. Since the alleged misrepresentations are specific clauses contained within the lease, these are plainly dealt with in the contract and "interwoven," so the fraud in the inducement exception is inapplicable here, too. Thus, under Wisconsin law the misrepresentation claim is also barred by the economic loss doctrine.

19

Florida maintains the independent tort doctrine, applicable here, which requires a party to demonstrate "that the tort is independent of any breach of contract claim." *Id.* at 408 (Pariente, J., concurring); *see also Lamm v. State St. Bank and Tr.*, 749 F.3d 938, 947 (11th Cir. 2014); *Yuken Corp. v. Gedcore LLC*, Case No. 22-20661-CIV-ALTONAGA/Torres, 2022 WL 3701233, at *3 (S.D. Fla. June 21, 2022) ("Under Florida's independent tort doctrine, it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims."). However, the doctrine is inapplicable to parties that are not in contractual privity. *Yuken Corp.*, 2022 WL 3701233, at *3; *Un2jc Air 1, LLC v. Whittington*, 324 So.3d 1, 3 (Fla. Dist. Ct. App. 2021); *see also Costa Investors, LLC v. Liberty Grande, LLC*, 353 So.3d 627, 633 (Fla. Dist. Ct. App. 2022) (quoting *Home Loan Corp. v. Aza*, 930 So.2d 814, 815–16 (Fla. Dist. Ct. App. 2006)). Moreover, where a director or officer's personal involvement and participation is the cause of the injury, or where they have actively participated in the torts of the corporation, they may be held individually liable. *Costa*, 353 So.3d at 633.

The lease was signed by FM as FI's general partner and by William Faulman as the president of FI. ECF No. 56-2 at 14. Kyle Faulman does not appear to have been involved at all with the lease. Although the parties dispute who is in privity of contract, I agree with EPSI that the lease is at minimum ambiguous on this point. The lease states that it "shall bind . . . the parties hereto *and their legal representatives*," and where "'legal representatives' is used in this Lease in its *broadest* possible meaning." ECF No. 56-2 at 12 (emphasis added). On the one hand, the differentiation between "the parties" and "their legal representatives" implies that the signatories are not parties to the contract. On the other hand, the language suggests these individuals are also "bound" and therefore also

20

parties. If FM and the Faulmans are not party to the lease, then Florida law would not bar the negligence claim under the independent tort doctrine due to the absence of privity. At the motion to dismiss stage I am unable to make a definitive decision on any ambiguities. Rather, because I can reasonably infer that the Faulmans and FM are not party to the lease, the claim is plausible. Therefore, I conclude that the claims pertaining to the lease are not barred under Florida law.

As for the agreement, FM signed as the general partner of FI, Kyle Faulman signed as President of ARC, and William Faulman signed as CEO of ARC. ECF No. 46-1 at 9. Unlike the lease, the agreement specifically states that it is "entered into . . . by and among [EPSI] . . . (the "Buyer") and [ARC] . . . (the "Seller"). ECF No. 46-1 at 2. The agreement consistently refers to the rights and obligations of "the Buyer" and "the Seller," which suggests that only EPSI and ARC are party to the contract, with the signatories serving only as representatives. Indeed, the Faulmans signed on behalf of ARC, and therefore are not party to the contract having signed in their representative rather than individual capacity. However, FM is described as signing on behalf of FI. Whether FM was party to the agreement is ambiguous because of the incongruency between the stated parties to the contract (EPSI and ARC) and the signature by FM on behalf of FI. For the same reasons as before, I can reasonably infer from the facts alleged that FM is not party to the contract. Since the independent tort doctrine cannot apply to parties that are not in privity of contract, the claims pertaining to the agreement may stand.

In summary, Wisconsin law categorically bars the negligence and misrepresentation claims under the economic loss doctrine. In contrast, Florida's independent tort doctrine does not bar the claims because I can reasonably infer from the

21

alleged facts that the parties are not in privity of contract. Since there is a conflict of laws, I now turn to the contact grouping and choice-influencing factors analyses.

### ii. Contact Grouping Analysis

When the issue involves a contract and tortious conduct, the contact grouping analysis requires me to consider (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, (e) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (f) the location(s) of the injurious conduct and injury. *NCR*, 2012 WI App 108, ¶ 13. If, after this analysis, "one state's contacts are clearly more significant," I "may" end my inquiry and apply that state's law. *Id*.

I'll begin by considering the lease. I have no information regarding where the lease was contracted or the place of its negotiation. Its performance and the location of the subject matter, however, is scattered among the six states in which the leased properties are located: Florida, Missouri, Illinois, Michigan, North Carolina, and Tennessee. EPSI is incorporated and has a principal place of business in Wisconsin, FI is considered a citizen of Florida, Tennessee, Georgia, and Illinois, FM is incorporated and has a principal place of business in Florida, William Faulman is a citizen of Florida, and Kyle Faulman is a citizen of Tennessee. Finally, it is unclear where the injurious conduct occurred. If, as EPSI alleges, there was fraud in the inducement, where were the parties when the misrepresentations occurred? EPSI, a Wisconsin corporation, would have felt the injurious effects in Wisconsin. The issues with burglary and vandalism occurred in Missouri. Because these contacts are so dispersed among many different states, I cannot say that any one state's contacts are "clearly more significant."

22

As for the agreement, EPSI avers that the place of contracting and negotiation was Florida based on its language that it "shall be construed according to and governed by the law of the State of Florida." ECF No. 46-1 at 8. Third-party plaintiffs apparently do not dispute this. I will accept this representation because it is an inference I can reasonably draw from the alleged facts. All other factors remain the same because they involve the same parties and events. But even with these two factors now weighing in favor of Florida law, I still do not find any one state's contacts "clearly more significant." EPSI correctly notes that almost none of these factors weigh in favor of using Wisconsin law. However, the question is not which state has the most or least contacts, but rather whether one state has so many contacts as to make its contacts "*clearly* more significant" than the others. For the purposes of this test, it is not enough to say that the balance weighs slightly in favor of Florida. Where, as here, no one state's contacts are "clearly more significant" than any other, I proceed to the choice-influencing factors analysis.

### iii.    Choice-Influencing Factors

There are five choice-influencing factors: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. *NCR*, 2012 WI App 108, ¶ 14. Because these are generally not specific to the lease or agreement, I conduct this analysis once for both contracts.

**1.    Predictability of Results.** "This factor deals with the parties' expectations." *Drinkwater v. Am. Fam. Mut. Ins. Co.*, 2006 WI 56, ¶ 46, 714 N.W.2d 568, 577. "In other words, which state's law, if applied, would lead to the more predictable or expected result based on the facts of the case." *Clorox Co. v. S.C. Johnson & Son, Inc.*, 627 F.Supp.2d

23

954, 966 (E.D. Wis. 2009). I lack substantial information as to where the alleged negligent conduct and misrepresentations occurred, so I cannot take this information into account. EPSI argues only that "the conduct that gives rise to EPSI's tort claims occurred outside of Wisconsin." ECF No. 59 at 9. It also points to the fact that the lease contains a Florida choice of law clause. But, much as in *Schimpf v. Gerald, Inc.*, it fails to "expound much on [the] significance" of these non-Wisconsin contacts. 52 F.Supp.2d 976, 1003 (E.D. Wis. 1999). Moreover, EPSI's economic injuries were felt in Wisconsin. As I noted in *Schimpf*, "the place of a tort for conflicts purposes is not necessarily where the negligent act occurs but where the injury is felt—in this case Wisconsin." *Id.* This factor favors application of Wisconsin law.

**2.** **Maintenance of Interstate and International Order.** "This factor requires that a jurisdiction which is minimally concerned defer to a jurisdiction that is substantially concerned." *Drinkwater*, 2006 WI 56, ¶ 50. Here, both states are more than "minimally concerned." As EPSI notes, Wisconsin has an interest in protecting its citizens, including EPSI. In contrast, many of the defendants are citizens of Florida, which has an interest in ensuring citizens are treated consistently with its laws. Therefore, this factor does not point me toward using either state's law.

**3.** **Simplification of the Judicial Task.** The Wisconsin Supreme Court "has stated a general rule that the judicial task is rarely simplified when lawyers and judges must apply themselves to foreign law." *Drinkwater*, 2006 WI 56, ¶ 53. Traditionally, this would weigh in favor of using Wisconsin law. Indeed, I am far more familiar with Wisconsin law than Florida law, having frequently been called to apply it. However, defendants correctly note that no Wisconsin court has directly addressed the application of the

24

economic loss doctrine to commercial real estate *leases*. Although I am confident in the analysis provided above, I am ultimately predicting what a Wisconsin court would do. This complicates the use of Wisconsin law, but only for the claims related to the lease. I must also consider that Florida law requires me to determine which parties are in privity of contract. However, I will be required to decide this issue anyway as I analyze the breach of lease and breach of contract claims. Taken together, these facts weigh slightly in favor of Florida law with respect to the lease-related claims, but Wisconsin with respect to the agreement-related claims.

   4.   **Advancement of the Forum's Governmental Interest.** This factor asks "whether the proposed nonforum rule comports with the standards of fairness and justice" embodied in Wisconsin law. *Drinkwater*, 2006 WI 56, ¶ 58. If applying Wisconsin law will advance its interests, "this fact becomes a major, though not in itself a determining, factor in the ultimate choice of law." *Id.* EPSI correctly notes that "Wisconsin has a strong interest in compensating its residents who are victims of torts." *Id.* at ¶ 59. However, it fails to grapple with Wisconsin's clear and strong policy interest in maintaining a distinction between contract and tort law. To be clear, if EPSI's claims are barred by the economic loss doctrine, it will still be able to pursue a claim premised on breach of contract or lease. The alleged injury may still be compensated, just through a different legal lens. Several decades of expanding economic loss doctrine strongly suggest that Wisconsin is committed to the differentiation of contract and tort law, and wants to encourage parties to diligently negotiate contracts rather than counting on tort law as a fallback mechanism. I conclude that this factor weighs strongly in favor of applying Wisconsin law.

25

**5.** **Application of the Better Rule of Law.** This factor only has an effect when one state's law "is anachronistic or fails to reflect modern trends." *Clorox*, 627 F.Supp.2d at 967–68. Neither state's relevant laws are outdated, as evidenced by their striking similarity. I do not find that this factor weighs in favor of applying either state's law.

After analyzing the five choice-influencing factors, I find that Wisconsin's choice of law rules direct me to apply Wisconsin law. To summarize overall the analysis, Wisconsin and Florida laws conflict in that the former bars the negligence and misrepresentation claims, while the latter does not. The grouping of contacts analysis does not demonstrate that either state has a "clearly more significant" interest in the events and contracts at issue. Finally, of the five choice influencing factors, two do not point toward application of either state's laws. With respect to the lease-related claims, one weakly suggests application of Florida law and two strongly suggest application of Wisconsin law. As for the agreement-related claims, all three remaining factors direct me to apply Wisconsin law. Therefore, I will apply Wisconsin law to the entirety of the negligence and misrepresentation claims. For the reasons previously outlined, Wisconsin law bars these claims, and EPSI may not proceed on them against any third-party plaintiffs.

### C. Other Claims

Aside from the negligence and misrepresentation claims, EPSI makes four other claims: breach of contract, breach of lease, unjust enrichment, and for an accounting and constructive trust. The parties agree, and I concur, that Wisconsin law should govern the

remaining claims. I consider third-party defendants' arguments for dismissal of each below.[10]

### i. Breach of Contract and Breach of Lease

EPSI claims that, in addition to FI, ARC and FM breached the agreement, while FM also breached the lease. FM moves to dismiss the claims against it, arguing that it cannot be held liable for these alleged breaches because it was not party to the contract.[11]

To begin, EPSI's complaint sufficiently alleges a claim for breach of contract. The elements of a breach of contract claim in Wisconsin are: "(1) a contract between the parties that creates obligations from the defendant to the plaintiff; (2) the defendant's failure to fulfill those obligations; and (3) damages flowing from the breach." *Knox v. Am. Fam. Ins. Co.*, No. 23-CV-790-WMC, 2025 WL 1137222, at *4 (W.D. Wis. Apr. 10, 2025). EPSI has alleged each of these. First, EPSI has alleged that FM was party to both contracts. ECF No. 17, at 23 (agreement), 26 (lease). Next, EPSI alleged breaches of both contracts. *Id.* at 28–30 (agreement), 30–32 (lease). Finally, EPSI has alleged damages for each. *Id.* at 30 (agreement), 32 (lease).

Third-party defendants counter that these allegations are insufficient because FM is not party to either contract by their plain language. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit

---

[10] Again, EPSI alleges all of these claims against FI. However, FI has not moved to dismiss these claims, and I do not discuss whether any dismissal might be meritorious.

[11] ARC does not move to dismiss the breach of contract claim against it, presumably because it is admittedly party to the agreement.

27

trumps the allegations."). However, as I have already described, the plain language of both contracts is ambiguous as to who is party to the lease.

For its part, the agreement states that it is "entered into . . . by and among [EPSI] . . . (the "Buyer") and [ARC] . . . (the "Seller"). ECF No. 46-1 at 2. Yet FM signed as the general partner of FI. ECF No. 46-1 at 9. This is confusing because the other signatories are described as to their association with ARC. But, if the only parties are ARC and EPSI, why is FI signing the lease, and why is FM signing on behalf of FI? From these facts, it is possible to reasonably infer that FM may be party to the contract. Therefore, I will not dismiss the breach of contract claim against FM. *See E. Lake Towers Corp. Ctr. v. Scott Paper Co.*, 347 F.Supp.2d 629, 630 (E.D. Wis. 2004) (holding that a motion to dismiss "should not be granted unless it is clear that the plaintiff will not be able to establish privity") (citing *Kaplan v. Shure Bros. Inc.*, 153 F.3d 413, 419 (7th Cir. 1998)).

Similarly, the lease was signed by FM as FI's general partner. ECF No. 56-2 at 14. As previously mentioned, the lease states that it "shall bind . . . the parties hereto *and their legal representatives*," and where "'legal representatives' is used in this Lease in its *broadest* possible meaning." ECF No. 56-2 at 12 (emphasis added). As a signatory and, thus, legal representative, this language suggests that FM is "bound" and party to the contract. True, the lease also differentiates between "the parties" and "their legal representatives," implying that these are separate entities. I disagree with the third-party defendants, though, that this resolves the issue. At best, it is ambiguous. Therefore, I also will not dismiss the breach of lease claim against FM, finding that it is possible EPSI will be able to establish it was in privity of contract to the lease.

### ii.    Unjust Enrichment

EPSI brings a claim for unjust enrichment alleging that all third-party defendants—FI, FM, ARC, William Faulman, and Kyle Faulman—refused to account for or deliver over $500,000 in post-closing sales proceed, misappropriating information and money. ECF No. 17 at 34. This pertains to the "open account" that EPSI discovered after FI told EPSI "that all post-closing sales and accounts receivable due EPSI had been paid to EPSI." *Id*. at 34.

"Under Wisconsin law, a plaintiff may not recover damages for both breach of contract and unjust enrichment based on the same conduct." *Mohns Inc. v. BMO Harris Bank Nat'l Ass'n*, 2021 WI 8, ¶ 48, 954 N.W.2d 339, 353. "Unjust enrichment . . . cannot coexist with a breach of contract claim." *Id*. Third-party defendants contend that, for this reason, the unjust enrichment claim must be dismissed. However, EPSI correctly notes that "the inconsistency doesn't matter at the pleading stage; a complaint may plead these two state-law theories in the alternative." *Blanchard & Assoc. v. Lupin Pharmaceuticals, Inc.*, 900 F.3d 917, 921 (7th Cir. 2018). "*Once a valid contract is found to exist*, quasi-contractual relief is no longer available." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) (emphasis added).

At this stage in the litigation, unjust enrichment is an appropriate alternative theory to plead for FM and the Faulmans. EPSI's claim of breach of contract is against ARC and FM, but the unjust enrichment claim stands against ARC, FM, and the Faulmans. As previously described, there is a controversy over whether the Faulmans and FM are party to the lease. Therefore, unjust enrichment is appropriately brought against them as an alternative theory.

In contrast, ARC is the only third-party defendant that no one disputes is party to the agreement. In *Harley Marine Servs., Inc. v. Manitowoc Marine Grp., LLC*, this district conducted a thorough analysis differentiating when it is appropriate to dismiss unjust enrichment as an alternative to breach of contract. 759 F.Supp.2d 1059, 1062–63 (E.D. Wis. 2010). "[W]here a plaintiff asserts a breach of contract claim and fails to allege any facts from which it could at least be inferred that the contract on which that claim is based might be invalid, the plaintiff is precluded from pleading in the alternative claims that are legally incompatible with the contract claim." *Id.* By dismissing wholly incompatible claims, both parties save time and money in discovery, while courts gain judicial economy. *Id*. at 1063. I conclude this is appropriate here. ARC, if found liable, will be held responsible for the alleged conduct via the breach of contract claim, including with respect to the $500,000 open account which EPSI alleges contravened the terms of the agreement. Moreover, the parties will not be prejudiced because if ARC later challenges the validity of the agreement, EPSI may always amend its third-party complaint to allege unjust enrichment against ARC.

However, even after dismissing the claim against ARC, the third-party defendants challenged whether EPSI has sufficiently pled the claim against FM and the Faulmans. A claim for unjust enrichment has three elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Sands v. Menard*, 2017 WI 110, ¶ 30, 904 N.W.2d 789, 798. Third-party defendants aver EPSI never alleges third-party defendants "unjustly received anything of value—other than the consideration from the sale of ARC's assets." ECF No.

30

68 at 14. In answer, EPSI points to statements that FM and the Faulmans "received benefits from EPSI, *including from the sale of ARC*" in defending against this claim. ECF No. 59 at 22 (emphasis added); *see also* ECF No. 17 at 23–24, 34. But "[u]njust enrichment . . . involves getting something for nothing, not providing a product for a price." *Brame v. General Motors, LLC*, 535 F.Supp.3d 832, 843 (E.D. Wis. 2021) (internal quotations and citations omitted).

It is possible to infer from the complaint that the $500,000 open account was outside and beyond the consideration for the sale of ARC's assets. However, EPSI fails to allege that FM and the Faulmans specifically received a benefit connected to the $500,000. In other words, EPSI never alleges that FM or the Faulmans received or otherwise benefitted from the $500,000. Rather, the third-party complaint alleges only vaguely that third-party defendants "misappropriated information and money from EPSI," that they have "received and retained benefits due EPSI." This does not satisfy the notice-pleading standard, which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. I also find the third-party complaint lacking with respect to allegations that the third-party defendants appreciated or had knowledge of the benefit, the second element of unjust enrichment. Therefore, the unjust enrichment claim must be dismissed.

### iii. Accounting and Constructive Trust

As its final claim, EPSI seeks an accounting and a constructive trust, alleging that third-party defendants "received and hold certain moneys related to the agreement transaction" as a result of the wrongful conduct described throughout the third-party complaint. ECF No. 37 at 35. It asks for an accounting and constructive trust of "all sums

31

or monies… by which Third-Party plaintiffs have been unjustly enriched." *Id*. This is effectively the entirety of the accounting and constructive trust claim.

"Accounting is a claim in equity available when a plaintiff needs to compel an accounting of his money or property held by a defendant." *Action Rentals*, 2023 WL 156278, at \*2. This is generally an appropriate remedy "when the plaintiff has shown that the defendant owes him money, but through no fault of his own, the plaintiff is unable to determine the amount." *Id*. EPSI bears the burden of showing a right to an accounting. *Felton v. Teel Plastics, Inc.*, 724 Fu.Supp.2d 941, 949 (W.D. Wis. 2010). This "requires both a complete inadequacy of legal remedies and a special ground to invoke equity jurisdiction." *RxUSA, Inc. v. Capital Returns, Inc.*, Case No. 06-C-00790, 2007 WL 2712958 (E.D. Wis. Sept. 14, 2007). "The need for a party to pursue an equitable accounting claim is generally unnecessary in light of modern discovery rules." *Id*. EPSI makes no such allegations. Moreover, there is no reason at this point to suspect that legal remedies will be wholly inadequate. Indeed, I am skeptical that it could, based upon what is likely to come out of discovery.

EPSI does not fare better with respect to the constructive trust. First, all parties agree a constructive trust is a remedy, not a cause of action. ECF Nos. 45 at 12; 59 at 22; *see also Tikalsky v. Friedman*, 2019 WI 56, ¶ 22, 928 N.W.2d 502, 5013. Moreover, a constructive trust requires an "additional showing" beyond proving unjust enrichment, such as "actual or constructive fraud, duress, abuse of confidence, mistake, commission of a wrong, or by any form of unconscionable conduct." *Tikalsky*, 2019 WI 56, ¶ 21. The constructive trust is apparently directed at the approximately $500,000 in the open account, but EPSI has not pled that this money was obtained by some sort of fraud

32

beyond the unjust enrichment. Therefore, EPSI cannot sustain the claim for an accounting or a trust—both of which are, in any case, remedies rather than causes of action.

### iv. Leave to Amend

Lastly, EPSI requests leave to amend its third-party complaint for any claims I find deficient. Although I should freely grant a party leave to amend its pleadings "when justice so requires," Fed. R. Civ. P. 15(a)(2), I "may deny leave to amend for undue delay, bad faith, dilatory motive, prejudice, or futility," *Su v. Johnson*, 68 F.4th 345, 355 (7th Cir. 2023). Third-party defendants claim only that allowing amendment would be futile. I agree that the claims for negligence and misrepresentation are categorically barred and will not grant leave to amend those claims. It is also inappropriate to maintain the "claim" for an accounting and constructive trust, which are actually remedies. I will not grant leave to amend that claim, because it is not viable at this stage of the litigation.[12] However, I believe that the deficiencies of the unjust enrichment claim could be cured with respect to FM and the Faulmans.[13] The issue is merely one of the clarity of allegations. Therefore, I will grant EPSI leave to amend its claim of unjust enrichment with respect specifically to FM and the Faulmans, but not ARC.

### IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Liberty Mutual Fire Ins. Co.'s motion to intervene (ECF No. 63) is **GRANTED**.

---

[12] Should an accounting and/or constructive trust become necessary as the litigation progresses, EPSI may later move to use these as remedies.

[13] Because the unjust enrichment claim against ARC is categorically barred since it appears no one disagrees that it is party to a valid contract, I will not grant leave to amend the claim as to ARC.

33

**IT IS FURTHER ORDERED** that Engineered Products and Services, Inc.'s ("EPSI") motion to strike or file a sur-reply (ECF No. 69) is **GRANTED IN PART**. No portion of the third-parties' reply brief will be stricken, but EPSI is granted leave to file a sur-reply. The sur-reply is deemed filed and it has been considered.

**IT IS FURTHER ORDERED** that Faulman Management Co. Inc. ("FM"), Associated Rack Corp. ("ARC"), William L. Faulman, and C. Kyle Faulman's motion to dismiss the third-party complaint (ECF No. 44) is **GRANTED IN PART** as follows: Engineered Products and Services, Inc. ("EPSI") may proceed on its claim of breach of contract against FM and ARC; EPSI may proceed on its claim of breach of lease against FM; EPSI's claims for negligence, misrepresentation, and for an accounting and trust are dismissed and it is not granted leave to amend the third-party complaint with respect to those claims; and EPSI's claim for unjust enrichment is dismissed, but it is granted leave to amend the third-party complaint with respect to FM and the Faulmans only.

**IT IS FURTHER ORDERED** that Engineered Products and Services, Inc. may file an amended counterclaim and third-party complaint without further leave of court within **21 days** of the entry of this order.

Dated at Milwaukee, Wisconsin, this 9th day of April, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

34